KENNEDY BROTHERS, Appellees, v. IOWA STATE INSURANCE COMPANY, Appellants.

**Fire Insurance:**   LIABILITY OF RAILROAD COMPANY:   CONTRACT WAIVING SAME:   NEGLIGENCE.   Negligence on the part of a railway company is presumed where it is shown that property has been destroyed by reason of a fire caused from the operation of its trains, but the company may contract for an exemption from such liability for injury to property located upon its right of way.

**Same:**   LIABILITY OF INSURANCE COMPANY.   In the absence of such a contract the liability of the railway company is primary and that of an insurance company secondary.

**Subrogation:**   WAIVER OF RIGHT BY INSURED; LIABILITY OF INSURANCE COMPANY.   Where the assured has contracted away the right of the insurance company to subrogation without its knowledge, he cannot recover in case of loss upon the policy.

**Lease:**   EXEMPTION FROM LOSS; BINDING UPON ASSIGNEES: HOLDING OVER.   A provision in a lease of right of way ground for elevator purposes that the railway company shall not be liable for any loss, to buildings from fire caused by the operation of trains, is not only binding upon the original lessees but upon their successors and assigns, who take the lease with knowledge of the provision, and this is true where the term of the original lease has expired and the tenants are holding over under the old lease.

*Appeal from Pocahontas District Court.*—HON. F. H. HELSELL, Judge.

THURSDAY, OCTOBER 16, 1902.

ACTION at law to recover upon. a policy of fire insurance. The policy bears date May 27, 1899, and was issued to the plaintiff firm. The following among other conditions appear therein: "This entire policy shall be void if the insured shall make any misrepresentations or concealments concerning the subject-matter of the property insured under this policy, * * * or if the insured shall make or have any contract or understanding whereby any person or corporation shall not be liable for any act or neglect in causing the fire. * * * If this company shall claim that the fire was caused by the act or neglect of any pe· son or corporation, this company shall, on the payment of the loss, be subrogated to all the rights of the insured against such wrongdoer, and shall be entitled to maintain an action therefor against such wrongdoer in its own name."

In the written application for the policy, signed by Kennedy Bros., the following question and answer appear: "What kind of a title have you to the land upon which the property to be insured is situated? Ans. Leased of the Illinois Central Railroad Company."

It appears that the land upon which the property destroyed by the fire in question was situated at the time thereof forms part of the station grounds of the Illinois Central Railroad Company at Fonda, Iowa. On March 1, 1897, an agreement of lease in writing was entered into between said railroad company, as lessor, and J. Kennedy & Co., as lessees, having reference to said land, the material provisions of which are as follows: "The lessor, for and in consideration of the covenants and conditions mentioned in the lease, to be kept and performed by the lessees and their assigns, hath demised and leased the premises in question to the said lessees, their heirs and assigns, to have and to hold the same for one year; the rent to be one dollar per annum, payable in advance; the land to be used for an elevator and corncribs, and all grain

to be shipped over the line of lessor's railway; that the lessees will exercise, at all times during the continuance of the tenancy such care as will adequately protect the buildings and personal property on said premises against all danger to which they may be exposed from fire by reason of the proximity of said premises to the railroad operated by lessor and the movement or use of locomotive engines and cars upon its tracks,—the risk of all loss, injury, and damages by fire, however caused, being assumed by the said lessees, who, in consideration of the leasing of said premises, agree to indemnify and save the said lessor harmless from all liability for damage by fire, however the same may originate."

The firm of J. Kennedy & Co. was composed of Joseph Kennedy and his three sons, Thomas, John, and Alexander. In October, 1898, the three sons bought out the interest of their father in the business, whereupon the firm name was changed to Kennedy Bros., and this new firm, by transfer and assignment, took over all the property, rights, and interests of the old firm, and thereafter carried on the business in which the old firm had been engaged. It does not appear that in respect of the occupancy of the premises any formal notice was ever taken of the expiration of the period fixed in the lease, nor of the change in the name and membership of the firm. The old firm occupied the premises after the expiration of the one-year period down to the time of dissolution for the same purpose and in the same way as before, and the new firm, after its organization, continued in the same way. During the existence of the firm of J. Kennedy & Co., a large double corncrib was built upon the premises, and this, with a quantity of ear corn and some agricultural implements stored therein, were in terms covered by the policy in suit and destroyed by the fire in question. Such other facts as are material to a determination of the case are referred to in the opinion. At the close of all the evidence

the defendant moved for an instructed verdict, which was overruled.    Thereupon the plaintiffs moved for an instructed verdict, and this motion was sustained.    The jury, under direction of the court, returned a verdict for $1,022.51, and a judgment for that sum and costs was entered against defendant by the court.    The defendant appeals.—*Reversed.*

*James C. Davis* and *H. Scott Howell & Son* for appellant.

*Botsford, Healy & Healy* for appellees.

BISHOP, J.—It seems clear that, had the policy in question been issued to, and this action brought in the name of, J. Kennedy & Co., there could have been no recovery, especially as it appears without much question in evidence and there being no contention in the argument, that the fire was caused from the dumping of live-coals from the fire box of a locomotive engine standing on an adjacent track, and belonging to the railroad company.    Under Code, 1873, section 1289, re-enacted as section 2056 of the present Code, any corporation operating a railway "shall be liable for all damages sustained by any person on account of loss of or injury to his property occasioned by fire set out or caused by the operation of such railway."    The fact of fire so caused being shown, a presumption of negligence on the part of the railroad company follows without further proof.    *Engle v. Railway Co.*, 77 Iowa, 661.    A railroad company may contract, however, for exemption from liability for its negligence in causing fires to property permitted to be located upon its right of way.    *Griswold v. Railroad Co.*, 90 Iowa, 265.

It is well settled that, in the absence of a contract to the contrary, the liability of a railroad company for

*1, LIABILITY of railway Co.; contract waiving same: negligence.*

fires caused by its negligence is primary in character

**2. SAME: liability of insurance Co.** and the liability of an insurance company, carrying a policy covering the property burned, is secondary. In other words, a railroad company, under such circumstances, is charged as of an absolute fixed liability. The measure of responsibility of an insurance company is that of a surety, or one who indemnifies. A recovery from the railroad company, therefore, operates as a satisfaction of the indemnity afforded by the insurance policy. *Allen v. Barrett,* 100 Iowa, 16; *Carstairs v. Insurance Co.,* (C. C.) 13 Fed. Rep. 473; *Inman v. Railway Co.,* 129 U. S. 128 (9 Sup. Ct. Rep. 249, 32 L. Ed. 612).

Whether an insurance company, having paid a loss under a policy issued by it, is entitled by subrogation to recover the amount paid by it from the railway company,

**3. SUBROGATION: waiver of right by insured: liability of insurance company.** through whose negligence the fire occurred, although no provision is made for it in the policy, we are not called upon to determine. It was competent for the parties to incorporate such a provision in the contract of insurance, and that was done in this instance. Now, of course, there can be no such thing as subrogation where the party insured has contracted away all right of recovery as against the railroad company, and it follows in reason and from authority that where it appears the insured has contracted away the right of the insurance company to subrogation without its knowledge and consent, he cannot recover, in case of loss upon the policy. *Carstairs v. Insurance,* (C. C.) 18 Fed. Rep. 473; *Fayerweather v. Insurance Co.,* 118 N. Y. 324 (23 N. E. Rep. 192 6, L. R. A. 805); *Sims v. Insurance Co.* 101 Wis. 586 (77 N. W. Rep. 908); *Dilling v. Draemel,* (Com. Pl.) 9 N. Y. Supp. 497.

Such being the law, and there being no dispute as to the provisions of the policy in suit, and no dispute as to the terms of the lease from the railroad company to J.

Kennedy & Co., the court below, in sustaining the motion
of plaintiffs for a verdict and judgment, evidently held to
the view that the written lease entered into between the
railroad company and J. Kennedy & Co. was not binding
in respect of its covenants and conditions upon the plain-
tiff firm.    The correctness of this holding is, therefore, the
real question in the case before us for determination. We
think the question may be fairly stated thus:    Could the
railroad company, relying upon the provisions of the lease,
successfully resist an action for damages on account of the
fire brought against it by plaintiffs, or by another claim-
ing by through or under them?    If this question is to be
answered in the affirmative, then it follows that the judg-
ment of the court below was based upon error.    If a nega-
tive view is to be taken, then, leaving out of view other
questions made, the judgment should stand.

Turning, for a moment to a consideration of the facts
in the case, we think it clear that while a term of one year
only is provided for in terms in the lease, yet a more ex-
tended period of occupancy was contemplated by the parties
thereto.    J. Kennedy & Co. were buyers and shippers of
grain and dealers in agricultural implements, and in the
lease it is provided that they shall erect on the demised
premises an elevator and corncrib, and shall conduct a
grain business, shipping over the line of the railway com-
pany.    The rent reserved is a nominal sum, and in fact
was never demanded or paid, indicating clearly that the
object was to secure a shipping business, rather than a
rental income.    This view is further emphasized by the
fact that no attention whatever was paid to the expiration
of the period provided for in terms in the lease.    Under
such circumstances there can be no doubt but that all the
provisions of the lease, its covenants and agreements, were
in force and binding at least during the continuance of
the tenancy of the firm executing the same.    Conceding
that under section 2991 of the Code a tenant holding over

after the expiration of the lease becomes a tenant at will, as contended for by appellee, the conclusion as stated, above remains. *In German State Bank v. Herron*, 111 Iowa, 25, we said: "There is no reason, however, for extending the statute beyond its terms. Under the law as it formerly stood, a tenancy from year to year, or for a less time, when definitely fixed as the term of the lease, was implied from the tenant holding over with the assent of the landlord; and this, under the same conditions as specified in the contract, in so far as applicable to the new situation. This doctrine has even been extended to leases void as against the statute of frauds, where evidence may be introduced to establish them. The contract creating the relation of tenancy is implied in every respect as before, save that of duration." See, also, *Lumber Co. v Kimball*, 111 Iowa, 48; *Newall v. Sanford*, 13 Iowa, 191; *Bradley v. Slater*, 50 Neb., 682 (70 N. W. Rep. 258; Taylor, Landlord & Tenant (2d Ed.) section 525.

On behalf of appellant it is urged in argument that the plaintiff firm is bound as the original lessee, inasmuch as the several members thereof were members of the firm executing the lease. It is pointed out that the only change was a dissolution of the firm occasioned by the retirement of J. Kennedy, the father, and in the name of the firm, the new firm taking over all the property, and thereafter continuing the business without change. The argument is not without merit; but holding, as we do, that the covenant for indemnity was a covenant running with the land, we think the plaintiffs are bound by it. They were not trespassers upon the land, or in possession without leave or right. The several members of the firm testify that the old firm assigned all its intersts to the new firm, and surely this included whatever of right the old firm had in the property covered by the lease. Evidently the several members of the new firm so understood it. The instru-

*4. LEASE: exemption from loss; binding upon assignees; holding over.*

ment of lease itself passed into their possession, and they must be held to know of its provisions, one of which was that the covenants and conditions thereof should be binding, not only upon the lessees, but their assigns. The new firm could not enter into possession of the property by virtue of the lease, retaining the right to repudiate such of its provisions as imposed duties and obligations. It appears that the railroad company knew of the change in the name of the firm, and, in view of the fact that no new contract or arrangement was demanded, it may well be presumed a continuance of possession was permitted in the belief that all the covenants and conditions of the lease would be observed by the new firm. Under the circumstances presented, we do not think the plaintiff firm could be heard to deny the binding force of the covenants and conditions of the lease, and to assert a claim for damages arising out of a fire loss against the railroad company.

Our attention has not been called to any cases presenting a state of facts similar to that we have before us. Our conclusion, however, finds support in *Railway Co. v. McClure* 9 N. D., 73 (81 N. W. Rep. 52 47 L. R. A. 149). There a lease containing substantially the same provisions appearing in the one before us was involved. The lease was executed by the Northern Pacific Railroad Company, and some time before the fire that company transferred all its property to the Northern Pacific Railway Company. The question in the case was whether or not the covenant in the lease exempting the railroad company from all damages caused by fire by its negligence was a covenant running with the land, and as such protected the assignee of the original lessor from liability. It was held that the covenant in question passed to the grantee, and invested it with the same rights thereunder which the old corporation had. In the course of its opinion the court says: "We have not been able to find an adjudication upon the question whether this particular kind of a covenant

runs with the land, and passes to the assigns of the lessor. Our conclusion, however, is, for the reasons stated, that this covenant passed to the plaintiff, and invested it with the same right of protection against losses by it, and to the same extent and in the same manner as the lessor might have asserted had there been no assignment of the lease." In Wood, Landlord & Tenant, section 335, it is said that "an assignee assumes all the liability of the lessee running with the land, whether he goes in under voluntary assignment or under an assignment by operation of law, and succeeds to all the rights and obligations under such covenant so long as he stands in the relation of assignee." We reach the conclusion that upon the record presented the plaintiffs are without right of recovery, and the motion of defendant for a verdict and judgment should have been sustained.

The cause is remanded for judgment in accordance with this opinion.—REVERSED.