CITY OF NEW YORK INSURANCE Co., Appellant, v. C. B. & Q.
Ry. Co., Appellee.

Insurance: UPON LEASED PROPERTY: EXEMPTION OF LESSOR FROM LIABIL-
ITY: SUBROGATION. Where a lease of railway property exempted
the company from liability for fire originated by its engines,
whether caused by negligence or otherwise, the exemption includ-
ing property of the lessor and any other person while on the leased
premises, and also included a provision that the lessee should pro-
cure insurance on the buildings to be so written that there should
be no recourse against the railway company, the exemption from
liability applied to property of the lessee; and upon payment of
the loss by the insurance company it acquired no right of subro-
gation which it could enforce against the railway company.

*Appeal from Polk District Court.*—HON. W. H. McHENRY,
Judge.

SATURDAY, MARCH 15, 1913.

THE property in question, having been destroyed by fire
set out by defendant company's engine, this action is brought
to recover of the defendant the amount of the insurance paid
by the plaintiff company on the property.—*Affirmed.*

*Chester J. Eller*, for appellant.

*W. D. Eaton and Guernsey, Parker & Miller*, for appellee.

GAYNOR, J.—It appears that on or about the 10th day of
October, 1910, the defendant company, owning and operating
a train through the town of Truro, set fire to and burned a
certain building situated on defendant's right of way, owned
by one William Steer; that the fire that consumed the building
was caused by sparks from the smokestack of defendant's

engine while being so operated by it. It appears that prior to said date the plaintiff herein entered into a contract of insurance with the said William Steer by which it insured the said building, to the said Steer, in the sum of $400; that, upon the happening of said loss by fire, the plaintiff settled with said Steer and paid him on account of said loss, under said policy, the sum of $400, and now the plaintiff brings this action against the defendant company for the amount so paid, on the theory that it was subrogated to the rights of said Steer against said company, on account of said loss. The defendant company, as a complete defense to said claim, alleges that on the 1st day of October, 1907, defendant leased to the said Steer that portion of its right of way on which said building stood, said lease providing that the said Steer should have and hold the same under said lease from the said 1st day of October, 1907, until such time as the same should be terminated, as provided in the lease, the lessee to pay as rent therefor the sum of $5 per annum, and give to the lessor, the railroad company, preference on all shipments of freight handled by the lessee to or from the town, above mentioned, when the tariff rates to or from common points are as low as those of any other company. It was further stipulated that either party might terminate the lease at any time upon giving thirty days' notice.

It does not appear that said lease was ever terminated by either party, and it appears that at the time of the loss, herein sued for, the building was standing upon the leased premises. The said lease was in writing and provided, among other things, that the lessee, during the continuance of the lease, should cause policies of fire insurance to be taken out upon the buildings situated on said premises, and upon the contents thereof; and cause the same to be so written that, in the event of any destruction or damage by fire, no insurance company should have recourse against this defendant, the lessor. The lease further provides as follows: ''The lessee agrees to hold the Chicago, Burlington & Quincy Railroad

Company (defendant herein) harmless from all claims, demands or suits for loss, injury or damage, including loss or damage occasioned by fire set out from the locomotives of the railroad company, whether caused by the negligence of the railroad company, or otherwise, to the person or property of the railroad company or its employes, or any other person whomsoever, while on or about the demised premises." It is on the above clause in the lease that the defendant bottoms its defense, claiming that this provision of the lease relieves it from any liability to the assured on account of the loss complained of, and that therefore the plaintiff company, claiming through the assured, has no right to which it can be subrogated, as against this defendant, and it is upon this provision of the lease that the court, at the conclusion of all the testimony, directed a verdict for defendant.

Under the issues thus tendered, and under the record made in this case, so far as this appeal is concerned, it must be assumed that the defendant company negligently set fire to and burned the insured building. The evidence so tends to show, and the motion of defendant for a directed verdict was in the nature of the demurrer to this evidence, admitting all that it intended to show. This leaves for our determination only the question: Did the contract or lease entered into between the defendant company and the assured relieve the company from liability to him, the assured, for the loss occasioned by the fire so set out?

It is conceded that, if the contract or lease was in full force and effect and covered the property destroyed by the fire, the defendant company was not liable to the assured for the loss, and therefore not liable to the plaintiff on the theory of subrogation. See *Griswold v. Illinois Central Railway Company*, 90 Iowa, 265; *Kennedy v. Insurance Company*, 119 Iowa, 29; *Hartford Insurance Co. v. Railway Company*, 175 U. S. 91, (20 Sup. Ct. 33, 44 L. Ed. 84), and cases therein cited.

The plaintiff bases his right to a reversal in this cause upon

the following propositions: (1) That the terms in the lease exempting the railroad company from liability for fire set out through it own negligence do not include the assured in this case, nor his property. (2) That the evidence shows that the lease upon which defendant relies was abandoned by Steer and the railroad company prior to said loss, and was not in force at the time of the loss.

The plaintiff contends that the words, "any property of any other persons whomsoever," have relationship to others than the assured, and in support of this calls our attention to the other provision of the lease requiring the assured to protect the railroad company from liability by so insuring his property and so causing the policies to be written that, in the event of any destruction or damage by fire, the company insuring should not have recourse against this defendant.

The provision of the lease, relied upon by the defendant and under which defendant claims it was released from any liability to the lessee for any destruction by defendant of lessee's property, on the leased premises, is, to say the least, very queerly worded. It certainly does not mean that the assured—that is, the lessee—undertook and agreed with the company, upon the execution of the lease, to hold the company harmless for loss or injury to the person or property of the railroad company itself, occasioned by the negligent act of the company, while such property of the railroad company was on or about the demised premises, or to protect the company for loss or damage to the property of its own employes while on or about the demised premises, where the loss occurring grew out of the negligence of the company itself, but it does mean, and the contract or lease, when properly read and interpreted means, that the lessee therein would hold the lessor company harmless from all demands or claims for loss, injury, or damage to the person or property of every person whomsoever while the same was on or about the demised premises, no matter from what source or from whose active negligence the loss or damage arose. That is, the lessor, the rail-

road company, having given to the assured, the lessee, the right to the possession and control of the leased premises, being a portion of the depot grounds, had a right to contract with the lessee that it would not be liable for injury or damage to the person or property of any one whomsoever, while the property remained on the leased premises, exposed as it necessarily was to the hazard from fire arising from the operation of defendant's trains, and it would be idle to say that the contract between the parties had only relationship to property, other than the lessee's, kept upon the demised premises; that for all property kept, or permitted by the lessee to be, on the demised premises, belonging to third persons, when destroyed by fire, the lessee would hold the company harmless for loss or injury to it, and yet at the same time could maintain an action against the company and recover from the company for loss occasioned to property belonging to the lessee kept by him upon the demised premises.

We think the words are broad enough to include all property kept by the lessee upon the demised premises, exposed, by being so kept, to the dangers and hazards incident to the operation of defendant's trains. That is, it was the evident intent and purpose of the contracting parties, in the making of the lease, to give to the lessee the right, which he otherwise would not have, to place his property and the property of others, if he so elect, within the zone of the danger, necessarily incident to the operation of defendant's trains, and that in the giving of this right, and in the acceptance of it by the lessee, the lessor, the defendant company, should be released from all liability resulting to the lessee or his property or property placed there by his consent.

We do not think that this provision of the lease is controlled at all by the provision relating to the placing of insurance on the property by the lessee. It can be construed simply into an additional protection to the company in the event of loss by fire. It cannot be construed into an agreement to protect the lessor company for damages resulting to

the property from any other source. This clause under consideration is broader and protects the company from any liability or loss to the property on the demised premises from any source.

If it be said that the failure to take insurance in the manner and form prescribed by the first provision of the lease rendered the defendant liable for loss to the lessee, or assured, for damages resulting to his property through the negligence of the defendant, or that the taking of the insurance without the saving clause therein provided for left the company liable for the loss to the property on the demised premises, then the clause for insurance afforded the defendant company no protection from liability to the lessee; but these two clauses must be read together. The evident purpose of the lease, with those provisions, was to secure to the company immunity from liability for loss occasioned to property while upon the demised premises, during the continuance of the lease, and no other construction will harmonize with the provisions of the lease touching the matter of defendant's liability.

Again, it is claimed that, prior to the loss complained of, the lease between the company and assured had been abandoned. This claim is not supported by the record. That the lease was made between the parties, that this building was on the leased premises at the time of the loss, that the defendant rented and received rent from other parties, prior to the loss, and after the execution of the lease, is not in dispute. We find no reason in the record for giving this claim further consideration.

We find no error in the record, and the cause is *Affirmed.*